## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANYIAH K. KNIGHT | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. 05-258 E |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Comissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION

### *I. Introduction*

Plaintiff-mother, Aisha Knight, commenced this action on behalf of her daughter, Anyiah Knight ("Plaintiff"), a minor who is a resident of Erie, Pennsylvania, pursuant to 42 U.S.C. § 405(g), for review of the decision of the Social Security Administration ("SSA"), denying Plaintiff's claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381-1383f. Presently before this Court are the parties' cross motions for summary judgment. Upon careful and independent consideration of the administrative record and all filings in this Court, the court will grant Defendant's Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment.

### *II. Background*

#### *A. Procedural History*

Plaintiff was born on December 12, 1999. Administrative Record ("R.") at 26 . On September 19, 2003, Plaintiff-mother applied for Supplemental Security Income on behalf of Plaintiff, alleging that Plaintiff was disabled since August 1, 2003, because her speech is unintelligible, causing her to

1

get upset when she is not understood. R. 53-54. On December 16, 2003, Plaintiff's application was denied. R. at 29. Plaintiff requested a hearing, which was held via video teleconference in Erie, Pennsylvania on January 6, 2005. R. at 13, 21, 99. Plaintiff and her mother were represented by counsel and both testified. R. at 13, 99, 101, 107. On January 25, 2005, the ALJ issued a decision denying Plaintiff's application for SSI finding that Plaintiff was not disabled under the Act. R. at 10-20. Plaintiff-mother requested review of the ALJ's decision on February 11, 2005. R. at 6. The SSA's Appeals Council denied Plaintiff's request for review on July 26, 2005, R. at 3-6, rendering the ALJ's unfavorable decision the final decision of the Commissioner. Plaintiff commenced the present action alleging that substantial evidence did not support the ALJ's decision.

## *B. Testimony and Treatment History*

In her Application for Social Security Income, Plaintiff's mother reported that then-three year old Anyiah's speech was rarely understood by people who did not know her – or even those who did know her. R. 44. She also reported that Anyiah did not ask questions, take part in conversations, or talk about what she was doing. R. 45.    According to her mother, Anyiah was unable to count, identify letters, ask what words meant, or recite her numbers. R. 46.    She also indicated that Anyiah's speech problems affected her behavior so that she did not enjoy being with other children her own age, did not share toys, take turns, did not play pretend games with other children, and did not play board games. R. 47. Her mother further reported that she would get frustrated when people did not understand her and would throw things at her mother or brother when they did not understand. R. 62.

In an initial Early Childhood Intervention Evaluation Report based on observations in her home on May 29, 2003, the screener indicated that Anyiah was very soft spoken and did not move

2

her lips when she spoke, her speech was unintelligible, and she spoke in 3-4 word sentences. R. 67. She was described as having good comprehension skills and was able to complete the screening process with minimal directions.

She was later tested on July 8, 2003. Her Arizona Articulation Proficiency Scale-3 score was 39.5, which showed her speech to be unintelligible. R. 68. She was ranked in the first percentile range. R. 68. Her speech errors were characterized as various sound substitutions and distortions. The report indicates that "[t]here are no concerns for Anyiah in the areas of cognitive, receptive and expressive language skills." R. 68.

As of October 28, 2003, Plaintiff was receiving speech therapy services through the Disabilities Department of the Greater Erie Community Action Committee. She received home-based therapy once a week and attended a group session twice a month. R. 59. Her teacher completed a Child Care Questionnaire on October 20, 2003, in which she reported that: Plaintiff was achieving at the appropriate skill level for her age, had difficulty expressing herself and became frustrated when not understood, her ability to comprehend, follow directions and pay attention were age appropriate, she completed projects but needed assistance and redirection to stay on task, she was a friendly child who is usually eager to do new things, and that although she had difficulty communicating with others due to her speech, she attempted to make herself understood. R. 60-61.

In a November 14, 2003 diagnostic report, Diane Wisinski, M.A., a speech/language pathologist, indicated that Plaintiff's mother opined that Plaintiff could understand very well what was said to her but could not be understood. R. 87. Ms. Wisinski reported that Plaintiff was attentive, waited for an appropriate time to respond to questions, and interacted well. She reported that regarding receptive language, Plaintiff's auditory comprehension age equivalency was above her

3

current chronological age expectance. R. 88. She reported that plaintiff was able to identify colors and categories of objects, and understood picture analogies.    Plaintiff further demonstrated comprehension of "more" and "most" and understood expanded sentences such as "point to the white kitten that is sleeping." She also demonstrated understanding of qualitative concepts such as tall, long, and short, and demonstrated understanding of shape. R. 88. Plaintiff also understood directions involving prepositions, understood time concepts, and passed some test items in the five year to five and a half year age range as well. Ms. Wisinski indicated that Plaintiff demonstrated receptive language skills at her chronological age level of three years and eleven months, or above. R. 88.

Regarding expressive communication, Plaintiff's total score was again above her chronological age expectancy. Ms. Wisinski noted, however, that Plaintiff's speech was highly unintelligible and would not be understandable to those not familiar with her speech pattern, and that she scored correctly on the items where one certain answer was expected. R. 88. Ms. Wisinski indicated that Plaintiff used words to describe physical states such as thirsty, hungry, and sleepy, and completed analogies and answered questions about hypothetical events. Plaintiff did not use all grammatically correct sentence forms but responded accurately to "where" and "why" questions and could identify categories. R. 88. Ms. Wisinski reported that although plaintiff received a score of four years and two months on the Preschool Language Scale-4, she was not functioning at that level with regard to her grammatical structures; she was at about a three year age level. R. 88. Furthermore, her vocabulary seemed "very advanced" despite her errors. R. 89.

According to Ms. Wisinski, the "Arizona Articulation Proficiency Scale-3 test placed Plaintiff at the moderate-severe range for speech intelligibility. Her speech, although rated as usually unintelligible, was understandable usually only at the single word level. R. 89. Ms. Wisinski opined

4

that Plaintiff was roughly at the 3 year age level with her expressive articulation skills. R. 89. It was recommended that Plaintiff receive speech language therapy for two one-half hour sessions per week for sixteen weeks (32 session). R. 89.

On December 3, 2003, Edward Zuckerman, Ph.D., a clinical psychologist, assessed Plaintiff's impairment in a Childhood Disability Evaluation Form and diagnosed her with a severe articulation disorder/delay. R. 91-92. He reported that she did not meet, medically equal or functionally equal the Listings of Impairment, specifically finding that Plaintiff had no limitation in the acquiring and using information domain, had no limitation in the attending and completing tasks domain, had a marked limitation in the interacting and relating with others domain, had no limitation in the moving about and manipulating objects domain, had less than marked limitation in the caring for yourself domain, and had no limitation in the health and physical well-being domain. R. 93-94. He described her as having above average intelligence. R. 93.

Beginning July 19, 2004, Plaintiff was seen at the Alpha Speech and Language Center for speech therapy. R. 75-76. The billing records indicate that Plaintiff was seen twice a week. R. 75-76. The record contains no further information regarding Plaintiff's progress there.

In an October 2004 children's Activities Questionnaire, her Head Start teacher indicated she saw Plaintiff one and a half hours per week in the home and three hours twice a month in a classroom environment. The teacher also indicated her belief that Plaintiff was receiving specialized speech services twice a month for one hour each. R. 77. The teacher noted that she was concerned about Plaintiff being very quiet, and indicated that Plaintiff could say several words, could name pictures, could say her full name, and could tell stories but her speech was difficult to understand. R. 78.

5

### *III. Social Security Disability Law*

#### *A. Disability Determinations*

The Social Security Act authorizes several classes of disability benefits, including SSI, *see* 42 U.S.C. § 1382. In the case of a claimant under the age of 18, this entitlement requires that the applicant be "disabled," which is met if the "individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I). Congress has authorized the Commissioner "to make findings of fact, and decisions as to the rights" of any individual applying for disability benefits. 42 U.S.C. § 405(b)(1).

In making determinations of childhood disability, the Commissioner applies a three-step process. 20 C.F.R. § 416.924. At each step the Commissioner must consider all evidence in the record, including any objective test results from medical sources, any treatment source opinions, and any subjective complaints from the child and his parent. Id. at § 416.924(f). If the Commissioner finds that a child claimant is disabled at any step in the process, the process ends. Id. The Commissioner also is required to resolve any discrepancies between the medical evidence and a claimant's subjective complaints. Id. at § 416.929.

At the first step in making a childhood disability determination, the Commissioner must establish whether the claimant is engaged in substantial gainful activity. If so, the claim is denied. 20 C.F.R. § 416.924(b). At the second step, the Commissioner must determine whether the claimant has a severe impairment or combination of impairments. Id. at § 416.924(c). The third step requires

6

the Commissioner to determine whether the claimant has an impairment, or combination of impairments, that meets, medically equals, or functionally equals one of the Listing of Impairments contained in Appendix 1 to 20 C.F.R. Part 404, Subpt. P (the "Listings"). 20 C.F.R. § 416.924(d). If the claimant has an impairment or combination of impairments that causes marked and severe limitations of function which meet, medically equal, or functionally equal a listed impairment, the regulations direct a finding of disabled. Id. In determining whether a child claimant's impairments are of sufficient severity to make her eligible for SSI, the Social Security Act requires the Commissioner to consider the combined effect of all of the claimant's impairments, without regard to whether any single impairment alone would be sufficient to find the claimant disabled. 42 U.S.C.§ 1382c(a)(3)(G). Once a claimant's impairments are established by the medical evidence, the Commissioner is required to consider the combined effect of these impairments throughout the disability determination process. Id.; 20 C.F.R. §§ 416.923, 416.924a(b)(4). For children, the regulations also require the Commissioner to consider the cumulative and interactive effect of multiple impairments within and between the domains of functioning. 20 C.F.R. §§ 416.926a(c) ("Any given activity may involve the integrated use of many abilities and skills; therefore, any single limitation may be the result of the interactive and cumulative effects of one or more impairments.").

Where a child claimant has an impairment, or combination of impairments, that fulfills the requirements of one of the Listings, the regulations direct a finding of disabled. 20 C.F.R. § 416.924(d). To medically equal a Listing, a child must have an impairment, or combination of impairments, that is similar to the requirements described in any Listing. Id.

Under the regulations, to functionally equal listings-level severity, the child's impairments must either be "extreme" functional limitations in one domain or must impose marked limitation in

7

at least two of the following six domains of functioning:

1. Acquiring and using information;

2. Attending and completing tasks;

3. Interacting and relating with others;

4. Moving about and manipulating objects;

5. Caring for yourself; and

6. Physical health and well-being.

Id. § 416.926a(g)-(l).

The regulations also require the Commissioner to compare the child's functioning to same-age, unimpaired children. 20 C.F.R. § 416.924a(b)(3). In addition, the Commissioner must consider all other factors that may affect a child's functioning, such as how well the child "can initiate, sustain, and complete" activities," id. 416.924a(b)(5)(I); how independently the youngster can function without requiring "extra help," id. 416.924a(b)(5)(ii); the impact of structured or supportive settings on the child's ability to sustain adequate functioning, id. § 416.924a(b)(5)(iv); and school attendance and participation, id. § 416.924a(b)(6)(v).

In this case, the ALJ concluded that Plaintiff, age five at the time of the hearing, had never worked, and thus, had never engaged in substantial gainful activity. 20 C.F.R. § 416.972. He also determined that she had expressive language disorder, which was a severe impairment within the meaning of the regulations as she had more than a slight abnormality and more than minimal functional communicative limitations. R. 14. He further concluded that as the medical evidence failed to show the presence of a hearing disorder or a comprehension deficit, resulting in ineffective verbal communication for her age, that her condition did not meet either listings that did not meet or

8

medically equal any impairment listed in Part B of Appendix 1 to Subpart P (20 C.F.R. § § 416.924(d)(1), 416.925, 416.926), specifically, listings 102.08A or 111.09. R. at 20, Finding No. 4. The ALJ also determined that Plaintiff did not have an "extreme" limitation in any domain of functioning or a "marked" limitation in the requisite two domains of functioning and therefore, did not functionally equal the severity of the listings. 20 C.F.R. § 416.924(d)(2) and 416.926(a); R. at 20, Finding No. 5.

In examining whether Plaintiff's impairments functionally equaled a listing, the ALJ found that Plaintiff has a "less than marked" limitation in the domains of 1) acquiring and using information; and 2) attending to and completing tasks; a "marked" limitation in interacting and relating with others, and no limitation in any of the remaining domains. R. at 20. Accordingly, the ALJ found that Plaintiff was not disabled. R. at 20, Finding No. 7 because her impairment "does not functionally equal the severity of the listings." R. at 20, Finding No. 5.

## B. *Judicial Review of Disability Decisions*

The Social Security Act provides for judicial review of any "final decision of the Commissioner of Social Security" in a disability proceeding. 42 U.S.C. § 405(g). The district court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Id. However the Commissioner's findings "as to any fact, if supported by *substantial evidence,* shall be conclusive." Id. (emphasis added). Accordingly, this Court's scope of review is "limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact." Schwartz v. Halter, 134 F.Supp.2d 640, 647 (E.D.Pa.2001).

9

Substantial evidence has been defined as "more than a mere scintilla" or "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The substantial evidence standard "is deferential and includes deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence." Schaudeck v. Commissioner of S.S.A., 181 F.3d 429, 431 (3d Cir.1999).

## *IV. Discussion*

Plaintiff appeals the ALJ's and Commissioner's decision and argues that the ALJ erred in failing to find that Anyiah Knight has a marked impairment in "acquiring and using information."

Plaintiff agrees with the Commissioner's finding that Anyiah has a marked impairment in the third domain involving her ability to interact and related with others. The plaintiff agrees with his conclusion that her speech deficits cause her difficulty in initiating and participating in conversations, using increasingly complex vocabulary, grammar, and that she can't speak clearly enough to allow both familiar and unfamiliar listeners to understand what she says most of the time. R. 13. The defendant does not dispute this.

However, the Plaintiff takes issue with the ALJ's conclusion that Plaintiff has a "less than marked" limitation in the domain of "acquiring and using information." R. at 20. The court finds that the ALJ's conclusion is supported by substantial evidence.

In the domain of acquiring and using information, the ALJ should consider how well the Plaintiff acquires or learns information, and how well Plaintiff uses the information she has learned. 20 C.F.R. § 416.926a (g). This includes the ability to perceive relationships, reason, and make logical choices. 20 C.F.R. § 416.926a(g)(1)(ii) (2005). The regulations explain that "[w]hen you think in words, you may solve a problem by using language to talk your way through it. You must also be

able to use language to think about the world and to understand others and express yourself; e.g., to follow directions, ask for information, or explain something." 20 C.F.R. § 416a(g)(1)(ii). Children in Plaintiff's age group (preschool ) should begin to learn and use skills that will help them to read, write, and do arithmetic when they are older. The regulations list specific age-group descriptors for preschool children (age 3 to attainment of age 6):

> For example, listening to stories, rhyming words, and matching letters are skills needed in learning how to read. Counting, sorting shapes, and building with blocks are skills needed to learn math. Painting, coloring, copying shapes, and using scissors are some of the skills needed in learning to write. Using words to ask questions, give answers, follow directions, describe things, explain what you mean, and tell stories allows them to acquire and share knowledge and experience of the world around you. All of these are called "readiness skills" and you should have them by the time you begin first grade.

20 C.F.R. § 416.926a(g)(1)(ii); see R. at 17.

According to Plaintiff, the ALJ erred in the second part of this domain, specifically the use of the information. According to plaintiff, while "Anyiah appears to have an above average level of intelligence, she is not able to use her skills as defined by this section, which describes the skills as 'using words to ask questions, give answers, follow directions, describe things, explain what you mean and tell stories [which] allows them to acquire and share knowledge and experience of the world around them.'" Pl.'s Br. at 7.

The evidence supporting the ALJ's determination that Plaintiff's limitations in this domain were "less than marked" include the following. The plaintiff interacts well with her peers. R. 59, 88. She plays well with others, willingly participates in activities, and completed the screening process with minimal directions. R. 67. She responded well to rules and directions, comprehended, paid attention, and followed instructions in an age-appropriate manner. R. 60, 88. The plaintiff also

11

understood picture analogies, demonstrated qualitative concepts, comprehended directions involving prepositions, understood time concepts and demonstrated receptive language skills at her chronological age level. R. 88. Her mother testified that the plaintiff spoke in sentences but mostly used single words, had a pretty good understanding of what people were asking her, and had pretty good perceptive capabilities. R. 110-12.

Plaintiff's expressive communication scores were above her chronological age expectance, despite her speech issues. She used words to describe physical states such as thirsty, hungry, and sleepy, she completed analogies, answered hypothetical questions, and correctly answered "where" and "why" questions. Her vocabulary was described as advanced by the speech language pathologist. R. 88-89. Although her speech is difficult to understand, she could say several words, could name pictures, could say her full name, and could tell stories. R. 78.

In addition, Dr. Zuckerman evaluated plaintiff's functioning and concluded that she had no limitation in the domain of acquiring and using information. R. 93. In the portion of Childhood Disability Evaluation Form", subtitle "Domain Evaluations – Acquiring and Using Information," he noted that she was of above average intelligence. R. 93. Plaintiff was able to understand the questions asked of her during the hearing, and provide answers which were intelligible to the questioner. R. 107-110

Finally, we note that the ALJ evaluated the medical evidence and concluded that Plaintiff's communication impairment is not associated or caused by a documented neurological disorder, nor does she have a documented hearing impairment. Therefore, the ALJ concluded that the criteria in sections 20 C.F.R. § 404 Part P, §§102.08A and 111.09 are neither met nor equaled. The parties do not dispute this. Nevertheless, the Plaintiff argues that "[w]hile the cause of Anyiah's speech deficiencies has not been determined, the result is the same as if it were cause by one of these

12

physiological disorders. She still cannot be understood when she speaks." Pl.'s Br. at 9. We reject this argument; the question is whether the child's impariment meets, equals, or medically or functionally equals a Listing. The record indicates that the ALJ carefully considered all the testimony and exhibits before applying the appropriate legal standards and making a decision. Thus, the ALJ's findings that Plaintiff has limitations in the "acquiring and using information" domain which are "less than marked" are supported by the substantial evidence listed above.

## V. Conclusion

For the foregoing reasons, this Court concludes that the decision of the ALJ is properly supported by substantial evidence. Accordingly, the Commissioner's Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied.

An appropriate Order follows.

Maurice B. Cohill, Jr.

Maurice B. Cohill, Jr.
Senior United States District Court Judge

Dated:    January 29, 2007

13